86 So.2d 760 (1956)
COMMERCIAL UNION FIRE INSURANCE COMPANY
v.
Walter E. BLOCKER et al.
No. 20713.
Court of Appeal of Louisiana, Orleans.
April 23, 1956.
*761 Curtis, Foster & Dillon, Robert M. Moore, New Orleans, for defendant-appellant.
Lemle & Kelleher, Carl J. Schumacher, Jr., and John T. Chambers, Jr., New Orleans, for plaintiff-appellee.
REGAN, Judge.
Plaintiff, the Commercial Union Fire Insurance Company, subrogee insurer of Peter Ricca, instituted this suit against the defendants, Walter E. Blocker, John Johnson, George Sterling and Charles Thomas, Sr., endeavoring to recover the sum of $476, representing property damage incurred by its assured's building, 2918-20 Washington Avenue, on August 3, 1953, at 10:00 P.M., when the three minor sons of defendants, Johnson, Sterling and Thomas, in the course of "playing with a parked tractor" owned by defendant, Blocker, inadvertently started the engine thereof, which set the tractor in motion and caused it to run into the property designated above.
Defendant Blocker pleaded the exceptions of "no right or cause of action" which were either overruled or referred to the merits and, in conformity with the rules of the First City Court, he simultaneously answered generally denying that he was guilty of any negligence which could be considered the proximate cause of the accident, and then asserted that his employee, the operator of the tractor, had exercised every reasonable precaution in safely securing this machine on the "job site" before departing therefrom on the evening of the accident.
The record discloses that the other three defendants were never served with a copy of the petition and citation nor does it reveal any pleadings filed on their behalf; we were informed during oral argument that this occurred because of their insolvency.
From a judgment in favor of plaintiff in the amount of $476 against the defendant, Blocker, he has prosecuted this appeal.
Walter E. Blocker is an "excavating contractor" and, as such, leased an Allis Chalmers HD5 Tractor Shovel, together with an operator therefor, to Farnsworth and Chambers, General Contractors, who were engaged in the construction of a "housing project" in Washington Avenue.
On August 3, 1953, at about 10:00 P.M. three colored boys, Frank Johnson, age 14, Lawrence Sterling, age 12 and Charles Thomas, age 7, had just emerged from a "motion picture show" near their homes, which are located in a Negro slum in the vicinity of Washington Avenue and Magnolia Street, when Lawrence Sterling's attention was attracted by a "bright orange tractor" parked on the "job site" near the street. He suggested that they investigate the tractor, which was readily agreed to by his companions. He mounted the tractor and insimulating and in simulating an operator thereof, he enthusiastically began manipulating the controls and, much to his surprise, the engine started. In his anxiety to turn the engine off "he pulled some more levers" which set the tractor in motion causing it to run into the premises designated as 2918 Washington Avenue. The tenant thereof, Jerome Lirocca, upon hearing the "crash" rushed outside to ascertain what had occurred and observed the boys "running away." The police were summoned and upon arrival at the scene they asked if anyone knew how to move the tractor away from the building. Lirocca, who had operated heavy equipment in the Army, volunteered to do so. He testified "I just stepped on the starter and she kicked off * * * after throwing the clutch out * * *."
Blocker, upon being interrogated "what precautions did you take with regard to safety in connection with this equipment?" responded "Well, we always have to lock it and dig the bucket into the ground * *. There's a watchman on the job * * *. It was Farnsworth and Chambers' watchman." Despite this testimony he later related that on the night of the accident he "didn't see any" watchman on the premises, and that there is no key or lock on the tractor, "its totally diesel and there's a valve, a little knob that you pull out which *762 closes the fuel and shuts it off" and to start the tractor "you push that valve in and step on the starter on the lefthand side, that's all." He asserted that there was no "way to render that equipment completely inoperative and lock it so nobody can use it" and on the night of the accident the tractor was parked "on the project * * about twenty-five (25) feet from the sidewalk." He finally related that he knew the neighborhood to be "a colored slum area * * * fully populated with many small children."
The operator of the tractor was not called as a witness. The defendant excused his absence by insisting that "we weren't able to locate him. I made several attempts to locate him but we couldn't find him."
Therefore, the record reveals that no one actually knew what safety precautions, if any, were exercised by the defendant's operator prior to parking it for the night. The record also reflects that the watchman was never called as a witness on behalf of the defendant.
In this court the defendant has reurged his exceptions of no cause or right of action and, in his endeavor to substantiate the validity thereof, points to plaintiff's petition which he asserts discloses that "the tractor which caused the damage was not being operated by * * * Blocker, his agents or employees, but was being operated by the minor children of the other defendants", therefore, he insists "it is well settled that the owner of a vehicle which causes damage while being operated by a thief is not liable therefor * * *."
It is our opinion that the exceptions are not well founded. Plaintiff's claim against the defendant is clearly predicated, in his petition, on the "attractive nuisance doctrine" which is a classical exception to the general rule reiterated hereinabove by the defendant.
The only question posed for our consideration is whether the "attractive nuisance doctrine" is applicable to the facts of this case.
Defendant maintains that the facts are insufficient to establish the contention of actionable negligence on his part.
Plaintiff, on the other hand, insists that the defendant failed to exercise ordinary care in parking an attractive "orange tractor" for the night, without proper safety precautions in a neighborhood, which he knew was "populated by many small children", whose curiosity was apt to be excited and naturally allured by this type of machinery.
The trial court answered the foregoing question in the affirmative and our analysis of the record discloses no error in its conclusions.
Various theories and reasons have been advanced and discussed by the courts as a justification for the application of the attractive nuisance doctrine. The fundamental concept of the rationale of the doctrine appears to be that the offending condition, circumstance or appliance (although its danger is apparent or obvious to those who have attained the years of discretion) is so enticing, alluring and calculated to excite the curiosity of childish instincts or propensities, so as to induce them to approach, mount, or use it, and that this inherent attractiveness amounts to an implied invitation to such children. Westerfield v. Levis, 1891, 43 La.Ann. 63, 9 So. 52, 56. See, also, 5 T.L.R. 151.
The doctrine of reasonable anticipation applies with particular force where the owner or his representative knew that many children reside in the immediate vicinity and are accustomed to gather about or may play with the machine in question; indeed, it has been considered sufficient that the owner thereof either knows or should have known that children are likely to be attracted to the place where the dangerous instrumentality is parked or maintained.
There is no doubt now that a tractor is both attractive and dangerous to children of tender years; the cases involving "tractors and children" which have been posed for our courts' consideration, at various times, have established this as a fact.
There is likewise no doubt, as the facts herein have proven, that Lawrence Sterling *763 was attracted to this "orange tractor" which is per se of a dangerous character with respect to a boy of his age. The tractor was left parked for the night, exposed, unguarded and without reasonable safety precautions in a slum area, which the owner knew was "populated by many small children" whose curiosity he knew or should have known was apt to be excited and naturally allured by this type of machinery.
The owner of the tractor failed to produce the operator of the tractor who was the only one that actually knew what, if any, safety precautions were exercised before parking the tractor for the night. Obviously the tractor was left insecure because Lawrence Sterling, possessed of no mechanical ability, simply "pulled the controls" indiscriminately and started the engine. In his anxiety to turn the engine off "he pulled some more levers" which inadvertently set the tractor in motion causing the property damage which is the subject matter of this litigation.
Lirocca, who occupied the building which was damaged, and who volunteered to move the tractor at the request of the police, testified with respect to the ease of starting the engine thereof "I just stepped on the starter and she kicked off."
The defendant testified that a watchman was employed by the general contractor to guard the tractor, however, neither the watchman nor the general contractor was produced to verify this statement.
The defendant, with respect to what safety precautions were exercised when the machine was parked overnight, initially asserted "we always * * * lock it * * *", although he later testified that there was no "way to * * * lock it so that nobody can use it."
The boy, Lawrence Sterling, twelve years of age, had arrived at that period in life when childish propensities to play with machinery have probably reached their full intensity.
In our opinion, the defendant failed to observe that degree of care which men of ordinary prudence have exercised under the same or similar circumstances. The danger which the defendant was obligated to guard against was such as reasonably might have been anticipated. He was charged with knowledge of ordinary childish conduct, and he was bound to anticipate the consequences resulting therefrom.
In the final analysis, the defendant relies on the rationale expressed in the case of Tabary v. New Orleans Public Service, Inc., La.App.1932, 142 So. 800, 801, in order to reverse the judgment of the lower court. In that case a parked tractor and several children of approximately the same age as the children in the present case, were involved, one of whom was fatally injured while playing in the rear of the tractor. The court, while recognizing the doctrine of attractive nuisance, refused to apply it to the facts of that case for several reasons which distinguish it from this case. In the Tabary case, Bryan, who was about thirteen years of age, removed the crank from its leather holster and then pushed it in so that it would become engaged with the engine. He then attempted to "`turn the engine over.'" He could not do this by hand and he, therefore, jumped from the top of the radiator to the crank which caused the engine to start. Castaing, who was also about thirteen years of age, was in the driver's seat, and he shifted the gears into reverse causing the tractor to run over and cause the death of one of their companions. The court in refusing recovery for the death of the child expressed the opinion that "the machinery was so difficult to start that only a very large boy (the court found as a fact that Bryan was `large for his age') with considerable mechanical knowledge, could have succeeded." The defendant "`was not bound to anticipate consequences resulting from the unusual or extraordinary conduct of the precocious ingenuity displayed by this particular crowd of boys.' * * * An expert called by plaintiff as a witness testified as to the precautions which he would have taken had he found it necessary to leave such a tractor unattended on a city street, and the precautions set forth by him were identically the same as those taken by * * * the operator. * * * [The boys] were well *764 aware of the danger that would result from the starting of the machine * * *."
A casual reading of the foregoing opinion immediately reveals its distinguishing characteristics, i. e., the fact that the engine of the tractor could only be started by "cranking it", which was so difficult that only a "very large boy, with considerable mechanical knowledge, could have succeeded." The defendant "was not bound to anticipate consequences resulting from the unusual or extraordinary conduct or the precocious ingenuity displayed by this particular crowd of boys"; and finally an expert testified that the operator thereof had exercised all reasonable precautions before leaving the tractor, during the lunch hour, unattended in a City street.
We are, therefore, of the opinion that the foregoing case is not apposite or controlling with respect to the facts of this case.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
McBRIDE, J., absent, takes no part.